UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD, successor by
merger to Transcontinental Insurance
Company, and TRANSPORTATION
INSURANCE COMPANY,

**MEMORANDUM & ORDER**
08-cv-3200(NGG)

Plaintiffs,

-against-

STARBRO CONSTRUCTION
CORPORATION and STAR
STRUCTURALS, INC.,

Defendant.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

On August, 6, 2008 National Fire Insurance Company of Hartford and Transportation Insurance Company (together "Plaintiffs") filed a Complaint against Starbro Construction Corporation ("Starbro") and Star Structurals, Inc. ("Star Structurals") (together "Defendants"), seeking a declaration that they are not liable to indemnify Defendants under the terms of their insurance policy. (See Compl. (Docket Entry # 1) 14.) Plaintiffs allege that, in response to a lawsuit resulting from a worksite injury (the "Underlying Lawsuit"), Defendants have not abided by their obligation under the insurance policy to cooperate with Plaintiff's investigation, settlement, and defense of the suit. (See id. ¶¶ 64-84.) Defendants have never appeared in this matter and the Clerk of Court entered default on September 5, 2008. (See Clerk's Entry of Default dated Sept. 5, 2008.)

On September 8, 2008, Ian Karim ("Karim"), the plaintiff in the Underlying Lawsuit, moved to intervene based on his "status as a potential judgment creditor of [Plaintiffs'] insured,

1

and as the plaintiff in the [Underlying Suit]." (See Memorandum of Law in Support of Motion to Intervene (Docket Entries ## 9-10) ("Int. Mem.") 4.) For the reasons that follow, Karim's Motion to Intervene is DENIED.

I. **BACKGROUND**

In May 2001, Defendant Star Structurals entered into a contract for steel erection work at a construction site in Brooklyn, New York. (Compl. ¶ 17.) Star Structurals contracted with Defendant Starbro "for the purpose of leasing a crane and procuring a crane operator to load and unload the steel erection work." (Id. ¶ 20.) Proposed intervenor Karim is the nephew of Abdul Sattar, who is the sole owner and principal of Starbro and Star Structurals, and was employed by Star Structurals as a "connector" on the site. (Id. ¶¶ 15-16, 23, 25.) As a connector, Karim's duties included "connecting steel beams as they came in on the crane." (Id. ¶ 24.) On July 7, 2001, Karim fell from the steel beams while working at the construction site. (Id. ¶ 23, 28.) The circumstances of the accident are disputed.

Seeking legal redress for injuries claimed to have resulted from the accident, Karim brought the Underlying Lawsuit against, among others, Defendant Starbro. (See id. ¶¶ 35-41.) Defendant Star Structurals was brought into the Underlying Lawsuit based on indemnification and other claims by other defendants in the case. (See id. ¶¶ 42-47.) At the time of the accident, both Defendants were covered under workers' compensation and employer's liability insurance policies (the "Insurance Policies") issued by Plaintiffs. (Id. ¶¶ 11-12.) Based on the Insurance Policies, Plaintiffs spent "a substantial amount of money" defending Starbro and Star Structurals in the Underlying Litigation. (Id. ¶¶ 40-41, 46-47.)

Claiming that Defendants have failed to adequately cooperate in the defense of the Underlying Litigation, Plaintiffs have sought a declaratory judgment from this court that, under

2

the terms of the Insurance Policies, they are not liable to Defendants. In support of their claim of non-cooperation, Plaintiffs point to, for example, "the issuance of an affidavit by Abdul Sattar (the sole principal of Starbro and Star Structurals) <u>in support</u> of his nephew, Ian Karim's, Motion for Summary Judgment" in the Underlying Lawsuit. (Memorandum of Law in Opposition to Ian Karim's Motion to Intervene (Docket Entry # 13) ("Opp. Mem.") 2 (emphasis added).) According to the Complaint, Sattar's affidavit "purports to assume liability on behalf of Starbro and Star Structurals in direct contravention" of the Insurance Policies. (Compl. ¶ 75; see also id. ¶¶ 73-79.) On September 5, 2008, Plaintiffs moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a). (See Docket Entry # 6.) The Clerk of Court entered default as to Defendants. (See Clerk's Entry of Default dated Sept. 5, 2008.)

Karim has moved to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). (See Int. Mem. 5-11.) In support of his Motion, Karim argues that he has met all four requirements for intervention as of right articulated in United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994). (Id.) Plaintiffs agree that the four-part test is applicable to the Motion to Intervene, but argue that it has not been met in this case. (Opp. Mem. 5-10.) As set forth below, the court concludes that Karim has not met all the requirements for intervention under Rule 24(a)(2).

## II. DISCUSSION

To intervene as of right under Rule 24, a movant must: "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." Brennan v. N.Y.C. Bd. of Educ., 260 F.3d 123, 128-29 (2d Cir. 2001) (quoting New York News, Inc. v. Kheel, 972 F.2d 482, 485 (2d Cir. 1992)); see also Pitney Bowes, 25

3

F.3d at 70. Failure to meet any of these requirements is fatal to a motion for intervention under Rule 24(a)(2). See United States v. New York, 820 F.2d 554, 558 (2d Cir. 1987) ("[A] failure to meet any of Rule 24(a)(2)'s requirements provides sufficient grounds to deny a motion to intervene as of right.").

As set forth below, the court concludes that the first requirement has been met, but that the second and third requirements have not been met. The court does not reach the fourth requirement, as its determination on the second and third are dispositive. Accordingly, the court denies the Motion.

### A. The Timeliness Requirement

"The determination of the timeliness of a motion to intervene is within the discretion of the district court, evaluated against the totality of the circumstances before the court." Farinella v. Paypal, Inc., 611 F. Supp. 2d 250, 258 (E.D.N.Y. 2009) (quoting D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001)). "Circumstances considered by the Court in making the timeliness determination include: (i) the length of time the applicant had notice before making the motion; (ii) prejudice to the existing parties from delay; (iii) prejudice to the applicant if the motion is denied; and (iv) any unusual circumstances for or against a finding of timeliness." Id.

Karim argues that his Motion is timely because it was filed approximately 30 days after the suit was commenced and that the case has not moved beyond the filing of the Complaint. (Int. Mem. 6-7.) Plaintiffs respond that, "[a]lthough Karim's delay in seeking intervention is relatively short, it is nonetheless prejudicial to [Plaintiffs] at this juncture." (Opp. Mem. 6.) Relying principally on the entry of default, Plaintiffs argue that they would be prejudiced should the court allow intervention at this time. (Id. at 5-6.) They also argue that, on account of the

interrelationship between Karim and Defendants, Karim likely knew about this case "almost immediately upon service." (Id. at 6.)

The court deems the Motion to Intervene timely. A relatively short period of time has elapsed since the filing of the Complaint and no proceedings, other than the entry of default, have been conducted. Cf. Arista Records, Inc. v. Dalaba Color Copy Center, Inc., No. 05-CV-3634 (DLI)(MDG), 2007 WL 749737, at *3 (E.D.N.Y. Mar. 7, 2007) ("[The] motion to intervene is timely, as it was filed just five months after the complaint was filed, and before the commencement of discovery."); E.E.O.C. v. Merrill Lynch & Co., Inc., No. 07-CV-6017(DAB), 2007 WL 2846361, at *1 (S.D.N.Y. Sept. 26, 2007) ("In this case, there is no question that the Motion to Intervene is timely since it was filed less than two months after this suit commenced."); Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC, 542 F. Supp. 2d 296, 303 (S.D.N.Y. 2008) (finding motion untimely when filed almost one year after knowledge of interest in litigation and following "substantial pretrial discovery").

Moreover, even though the Clerk of Court has entered default with respect to Defendants, this does not render Karim's Motion untimely. Plaintiffs claim that they would be prejudiced at this time because they were "poised to seek entry of a default judgment, thereby conclusively determining the issues of this lawsuit." (Opp. Mem. 6.) Yet, Plaintiffs "can hardly be said to be prejudiced by having to prove a lawsuit [they] chose to initiate." Security Ins. Co. of Hartford v. Schipporeit, Inc., 69 F.3d 1377, 1381 (7th Cir. 1995). To the contrary, there is a strong public policy preference for resolving disputes on the merits, rather than by default judgments. See Prosperity Partners, Inc. v. Bonilla, No. 04-CV-1362 (SJF)(ETB), 2005 WL 1661702, at *3 (E.D.N.Y. July 14, 2005) ("It is well-settled that the Second Circuit has a strong preference for resolution of disputes on their merits."). In recognition of this preference, the court does not find

Karim's Motion untimely simply because Defendants have defaulted. Accordingly, the court concludes that Karim has met the first requirement under Rule 24(a)(2).

## B. The Remaining Requirements

"[F]or an interest to be cognizable under Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" Brennan, 260 F.3d at 129 (quoting Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990)). The Rule requires "not a property interest but, rather, 'an interest relating to the property or transaction which is the subject of the action.'" Id. (quoting Rule 24(a)(2)). Moreover, "[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." United States v. Peoples Benefit Life Ins. Co., 271 F.3d 411, 415 (2d Cir. 2001) (quoting Washington Elec. Coop., 922 F.2d at 97).

Karim argues that he has an interest in establishing that Defendants in this action may collect damages under their Insurance Policies with Plaintiffs. (Int. Mem. 7-10.) He points to a split of authority concerning whether New York State Insurance Law § 3420 precludes intervention by an injured party in a dispute over insurance coverage before there is a liability finding with respect to the insured. (Int. Mem. 7-9.) He argues that an injured party has an interest in litigation "where the insurer has filed a declaratory judgment action with respect to coverage issues relating to that party's claim against one of its insured." (Int. Mem. 8.)

In response, Plaintiffs argue that, under New York law, "an injured party may assert a direct claim against an insurer only where a judgment against the insured person has remained unsatisfied for thirty days from the date of service on notice of entry of the judgment." (Opp. Mem. 8 (citing N.Y. Ins. Law § 3420(a)(2)). Accordingly, relying on several district court cases,

6

Plaintiffs argue that Karim should not be permitted to intervene because, until he has a judgment against Starbro or Star Structurals, he has no legally cognizable claim or interest to protect.

The court concludes that Karim does not have a "direct, substantial, and legally protectable" interest in this case. Plaintiffs are insurers that have brought a declaratory judgment action to determine their obligations under Insurance Policies between themselves and Defendants. Karim is not a party to those agreements. New York Insurance Law § 3420 provides Karim with a right to sue Plaintiffs for indemnification under the Insurance Policies, but his right to do so is contingent on both a finding of liability as to Defendants, as well as the failure of Defendants to pay Karim for thirty days. See Vargas v. Boston Chicken, Inc., 269 F. Supp. 2d 92, 96 (E.D.N.Y. 2003) ("Section 3420 requires a third party to obtain a judgment against an insured before she may enforce a right of contribution or indemnification against an insurer."); Hartford Fire Ins. Co. v. Mitlof, 123 F. Supp. 2d 762, 765 (S.D.N.Y. 2000) (injured party "cannot bring a direct action . . . until they have obtained a judgment . . . that remains unsatisfied for thirty days"). Neither of these two contingencies have occurred—at the moment, therefore, Karim's interest in this action is premised upon a "double contingency," which, as the Second Circuit has observed, is insufficient to satisfy Rule 24(a)(2). See Washington Elec. Coop., 922 F.2d at 97 (interest "based upon a double contingency . . . cannot be described as direct or substantial").

Although the court deems the interest in this case to be contingent, it is noteworthy that there is a split of authority among New York's courts on the significance of Section 3420 to the right of an injured party to bring a federal action against an insurer. Several courts have determined that the rights created under Section 3420 may not be enforced in a direct or declaratory action before the statutory preconditions for doing so have been satisfied. See

Vargas, 269 F. Supp. 2d at 97; Richards v. Select Ins. Co., 40 F. Supp. 2d 163, 165-69 (S.D.N.Y. 1999); NAP, Inc. v. Shuttletex, Inc., 112 F. Supp. 2d 369, 377-78 (S.D.N.Y. 2000). Other courts have determined that they can be. See Gravatt v. General Star Indem. Co., No. 98-CV-6670(RWS), 1998 WL 842351, at *2 (S.D.N.Y. Dec. 2, 1998); deBruyne v. Clay, No. 94-CV-4707, 1997 WL 471039, at *4 (S.D.N.Y. Aug. 18, 1997); Ryder Truck Rental, Inc. v. Allcity Ins. Co., No. 94-CV-0712, 1995 WL 628968, at * 2 (S.D.N.Y. Oct. 26, 1995).[1]

More to the point, at least two courts have determined that Section 3420 precludes an injured party from intervening as a defendant in a pending federal action brought by an insurer. Mitlof, 123 F. Supp. 2d at 771; Am. S.S. Owners Mutual Prot. & Indem. Ass'n, Inc. v. Alcoa S.S. Co., No. 04-CV-4309(LAK)(FM), 2005 WL 427593, at *8-*10 (S.D.N.Y. Feb. 22, 2005).[2] At least one court, however, has determined that intervention is appropriate under these circumstances. See In re U.S. Lines, Inc., 169 B.R. 804, 829 (S.D.N.Y. 1994).

Each of these cases involved slightly different factual and procedural scenarios, which the court does not review at this time. Instead, the court highlights two reasons why it concludes that Karim does not have a legally cognizable interest under Rule 24(a)(2). First, the court agrees with Mitlof that an "injured third [party is a] stranger[] to the indemnity contract, and would therefore gain an unanticipated advantage if . . . allowed into the action. Granting . . . intervention would circumvent the judgment requirement of § 3420, a prerequisite for actions by injured third parties against indemnity insurers, and create a right not contemplated by the state

---

[1] Some of these courts have recognized a split of authority among New York's appellate divisions on this issue. See, e.g., NAP, 112 F. Supp. 2d at 377.

[2] In Kheel v. American Steamship Owners Mutual Protection & Indemnity Association, 45 F.R.D. 281, 28 (S.D.N.Y. 1968), the court denied intervention to injured parties but permitted them to participate as amicus curiae. In reaching this conclusion, the court relied on several considerations, including the fact that the movants had not shown that their interests were inadequately protected by the existing plaintiffs (id. at 283-84), that they had no direct action available against the defendant insurer (id. at 284), and that intervention would not help clarify the purely legal questions before the court (id. at 284-85).

8

legislature." 123 F. Supp. 2d at 770. Second, the court agrees with those courts that have concluded that Section 3420 creates a substantive right, and considers this right to be the "legally protectable" interest that Karim is seeking intervention to protect. See Richards, 40 F. Supp. 2d at 167-68 (explaining that Section 3420 creates a substantive right against the insurer in derogation of common law); see also NAP, 112 F. Supp. 2d at 372-77. Because that right is contingent upon events that have not yet occurred, Karim has not shown a "direct, substantial, and legally protectable" interest that he is seeking to protect under Rule 24(a)(2).

Moreover, to the extent that Karim's interest would be impaired by an unfavorable ruling in this case, it would be on account of Defendants' breach of an insurance agreement to which Karim is not a party. Cf. MasterCard Int'l Inc. v. Visa Int'l Service Assoc., Inc., 471 F.3d 377, 390 (2d Cir. 2006) ("[A]ny harm to Visa's interests would result from FIFA's alleged conduct in breaching its contract with MasterCard and granting the sponsorship rights to Visa[, and] Visa cannot change this fact through intervention here since it is a stranger to the contractual dispute between MasterCard and FIFA."). Plaintiff's presence or absence in this litigation will not alter that fact. Id. (reasoning that the "ability to protect its interest will not be impaired or impeded because [of denial of] intervention").[3] Without an unsatisfied judgment against Defendants, Plaintiff has no legally protectable interest in litigating the terms of the agreements at issue.[4]

---

[3] Karim's position is that a default judgment against Defendants would not prevent him under preclusion principles from bringing an action against Plaintiffs following any unsatisfied judgment against them. (Int. Mem. 9-10.) Should Karim's rights under Section 3420 materialize, he will have the opportunity to litigate whether the requirements of res judicata or collateral estoppel have been met.

[4] In reaching this conclusion, the court notes one aspect in which it agrees with an argument offered by Karim in support of intervention. Cases have surmised that Section 3420 was designed to spare the insurer "involvement in litigation until the issue of its insured's liability and the scope of the obligation for damages have been adjudicated." NAP, 112 F. Supp. 2d at 373. Because the insurer brought the litigation in this matter, the court agrees that this policy would not be advanced or protected by precluding intervention here. However, as Judge Mukasey observed in Richards, "it is not plain that the statute's intent is to protect insurers from litigation." 40 F. Supp. 2d at 170.

Because Karim does not have a legally cognizable interest that would be impaired by disposition of this action, he has not met the second and third requirements under Rule 24(a)(2). As a result, the court need not consider whether any interest would be adequately protected by the parties to this litigation under the fourth requirement. See Pitney Bowes, 25 F.3d at 70 ("The intervention application will be denied unless all four requirements are met."). In any case, Karim does not have a legally protectable interest, so there is no issue of whether such an interest would be adequately protected by the parties to this litigation.

## III. CONCLUSION

As set forth above, Karim has not met all the requirement for intervention under Rule 24(a)(2). Accordingly, his Motion to Intervene is DENIED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
August 20, 2009

NICHOLAS G. GARAUFIS
United States District Judge